IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOARUS, L.L.C. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| BOLSON MATERIALS INTERNATIONAL, INC. | ) | |
| and | ) | |
| TIMOTHY J. HEENAN | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## COMPLAINT

Plaintiff Soarus L.L.C. ("Soarus"), by its attorneys, for its complaint against Bolson Materials International Inc. ("Bolson") and Timothy J. Heenan ("Heenan") alleges as follows:

## NATURE OF ACTION

1. This is an action for the willful and malicious misappropriation of the Plaintiff's trade secrets and for injunctive relief and damages arising under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* and for breach of a secrecy agreement and for unjust enrichment.

## PARTIES

2. Plaintiff Soarus is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 3930 Ventura Drive, Suite 300, Arlington Heights, Illinois 60004.

3. Defendant Bolson is a corporation organized and existing under the laws of Canada, with its principal place of business at 1902 30th Avenue, Vernon BC Canada VIT2A5.

4. Defendant Heenan is an individual and an employee of Bolson residing upon information and belief in Vernon, BC, Canada.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. Section 1332. There exists diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of costs.

6. This Court has personal jurisdiction over Defendant Bolson and Heenan. Defendants are doing business in Illinois and many of the events giving rise to the claims occurred in this district.

7. Venue is proper in this district under 28 U.S.C. Section 1391(b).

## GENERAL ALLEGATIONS

8. Plaintiff Soarus is the sales and technical services company for Nippon Gohsei in the United States.

9. Nippon Gohsei ("Nippon"), established in 1927, is a worldwide leader in specialty products including Gohsenol PVOH (polyvinyl alcohol film), Soarnol EVOH (ethylene vinyl alcohol polymer) and Nichigo G-Polymer BVOH (butenediol vinylacohol copolymer) and a wide diversity of other products that are custom-engineered with the latest technology for a wide range of commercial applications.

2

10. This lawsuit involves Nichigo G-Polymer ("G-Polymer") which is the first of its kind water soluble, biodegradable, extrudable, and reactive vinyl alcohol resin described as the world's first amorphous vinyl alcohol resin.

11. G-Polymer is a high-function new material that combines moldability and biodegradability with an ever widening range of applications, including water-soluble extrusions, molding and dispersants.

12. G-Polymer is a proprietary formulation that is kept strictly confidential by Plaintiff in order to derive a competitive and economic advantage in the marketplace derived from the secrecy of the chemical structures, chemical composition and other research and development information relating to the performance characteristics with other chemical additives, blending and performance characteristics under different environmental conditions.

13. Soarus develops customized solutions for customers using proprietary Nippon products (PVOH, EVOH and BVOH) with a fully equipped laboratory and a technical staff with years of experience with polymer science. If a customer brings a technical issue to the attention of Soarus, and Soarus believes Nippon confidential information may be communicated, Soarus will engage in customized development if and only if the customer first signs a nondisclosure or secrecy agreement.

14. At all times, Soarus has taken active steps to protect the secrecy of its customized research and development, technical details and test samples utilizing physical security measures, Non-Disclosure Agreements (NDAs) and Secrecy Agreements with customers.

15. In July 2009, Defendant Heenan approached Soarus to custom-design a specialty resin for Bolson's Fused Deposition Method Rapid Prototyping ("FDM/RP") equipment using G-Polymer. Defendant Heenan represented that Bolson had a specific FDM/RP process and equipment and that Bolson was looking for a custom-designed solution for its particular FDM/RP machine and process.

16. Soarus's Senior Account Executive (Jim Swager) responded to Heenan's expressed interest in G-Polymer with the up-front requirement that an NDA be signed first: "Once we have a signed NDA we can discuss G-Polymer technical details and samples."

17. Pursuant to Soarus's confidential and trade secret protection policy, Defendants were required to first execute a 9-paragraph Secrecy Declaration (aka "Secrecy Agreement") carefully drafted to protect all aspects of confidential information relating to the G-Polymer FDM/RP custom-design project, including samples and evaluation test results.

18. Pursuant to this Secrecy Declaration, Defendants agreed to take various steps to protect Nippon's proprietary and confidential information including:

> (a) Defendants "shall not" use the G-Polymer samples and/or confidential information disclosed by Soarus for any other purpose other than for the internal evaluation;
>
> (b) Defendants "shall hold" in "the strictest confidence" the Sample, Confidential Information and the results of the Evaluation, taking all reasonable measures to ensure the confidentiality and limitations on use;

4

(c) Defendants "shall limit" disclosure of the Samples, Confidential Information and the results of the Evaluation to only those officers, directors and employees who have "a need to know" in the Evaluation and who have first undertaken to be bound by and comply with the obligations of the Secrecy Agreement;

(d) Defendants "shall not" analyze the G-Polymer Samples to identify its chemical structure and/or composition;

(e) Defendants "shall not" apply for a patent or other intellectual property using any piece of the Confidential Information or the results of the Evaluation without prior written consent of Nippon.

19. Defendants agreed to all 9 provisions of the Secrecy Agreement but asked for "permission" for a narrow carve-out from the strict prohibition against filing patent applications if there was a "new discovery" during "the development of the Gpolymer for our application." Defendant Heenan states in a July 22, 2009 email: "More specifically, should the development be successful, we will only seek to protect our particular application in our process."

20. Therefore it was clear that the proposed carve-out was very narrow and dependent upon a patentable "new discovery" relating to Bolson's existing FDM/RP equipment and process if and only if the development relating to Defendants' existing FDM/RP process was successful and yielded a patentable new discovery relating specifically to Bolson's application. Another Heenan email confirms this narrow carve-out: "I just want to protect this small specialized application."

5

21. Based upon these representations, which turned out to be false, Soarus agreed to add this narrow carve-out as Paragraph 10 at the end of the first 9 paragraphs of the Secrecy Agreement as follows:

> Notwithstanding Article 6 hereof, Bolson is free to patent and protect any new applications using G-Polymer® in the specific area of Fused Deposition Method Rapid Prototyping Equipment and Methods.

22. The Secrecy Declaration, adding Paragraph 10, was signed by Defendant Heenan as Manager-Director of Bolson on August 21, 2009.

23. Defendant Heenan thereafter intentionally and covertly filed a provisional patent application on September 4, 2009 --just days after the Soarus Secrecy Agreement was signed -- that eventually resulted in the issuance of U.S. Patent 8,404,171 (the '171 patent) on March 26, 2013 entitled "Use and Provision of an Amorphous Vinyl Alcohol Polymer for Forming a Structure." The patent has been assigned by Defendant Heenan to Defendant Bolson.

24. The '171 patent establishes, on its face, that Defendant Heenan violated the August 21, 2009 Secrecy Agreement because the '171 patent does not disclose any "new discovery" or "new application" relating to Bolson's FDM/RP technology. Instead, the '171 patent misappropriates and converts Plaintiff's trade secrets and confidential information obtained and derived from Soarus under the Secrecy Agreement for the "use and provision of an amorphous vinyl alcohol polymer" (i.e. G-Polymer) as a water soluble material for use in any 3-D Printing "FDM Machine."

6

25. The Bolson FDM/RP process is not mentioned once in the patent; the object of the invention is instead "to provide a polymer that is water soluble facilitating dissolving the support" and "to use a water soluble polymer having greater operating temperature"—all proprietary and confidential information obtained and derived, for the unjust benefit of the Defendants, from the samples and confidential information that Defendants obtain access to under the Secrecy Agreement through willful and malicious misrepresentations, deception and improper means.

26. Defendants' actions at all times were willful and malicious and such actions ultimately resulted in the destruction of Plaintiff's trade secrets upon publication of the '171 patent.

## COUNT ONE

## TRADE SECRET MISAPPROPRIATION

27. Soarus repeats and realleges the averments in paragraphs 1-26 as if fully set forth herein.

28. G-Polymer is a proprietary formulation that is kept strictly confidential by Plaintiff in order to derive a competitive and economic advantage in the marketplace derived from the secrecy of technical information, individually and in combination, of the chemical structures, chemical composition and other research and development information relating to the G-Polymer performance characteristics with other chemical additives, as well as blending and performance characteristics under different environmental conditions, all of which are not generally known in the trade (hereinafter "trade secrets and confidential information").

7

29.     Plaintiff's trade secrets and confidential information qualify as trade secrets, individually or in combination, under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*. Plaintiff's G-Polymer trade secrets are not generally known in the trade; reasonable measures have been taken to protect the Plaintiff's trade secrets and confidential information; and Plaintiff derives an actual or potential economic advantage from the secrecy of such information.

30.     Defendants' actions constitute misappropriation of Plaintiff's trade secrets and confidential information, in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*. including (a) the unauthorized acquisition of Plaintiff's trade secrets and confidential information by false pretenses and misrepresentations; (b) the unauthorized disclosure of Plaintiff's trade secrets and confidential information; (c) the unauthorized use of Plaintiff's trade secrets and confidential information.

31.     At all times, the acts of misappropriation by Defendants have been willful and malicious including but not limited to the intentional publication and destruction of Plaintiff's trade secrets and confidential information.

32.     Soarus has sustained and will continue to sustain damages and Plaintiff is seeking all available remedies at law and in equity including monetary and injunctive relief.

## COUNT TWO

## BREACH OF SECRECY AGREEMENT

33. Soarus repeats and realleges the averments in paragraphs 1-32 as if fully set forth herein.

34. The Secrecy Agreement is a valid and enforceable agreement under Illinois common law.

35. Defendants intentionally breached the Secrecy Agreement, including paragraphs 1, 2, 3, 5, 6, 8 9 and 10 of the Agreement.

36. Defendants have been damaged by Defendants' breaches of the Secrecy Agreement.

## COUNT THREE

## UNJUST ENRICHMENT

36. Soarus repeats and realleges the averments in paragraphs 23, 25 and 26 as if fully set forth herein.

37. Defendants sought out Soarus for its know-how, assistance and the engineering of a customized solution.

38. Soarus provided Defendants with proprietary information pursuant to the Secrecy Declaration which Defendants unjustly retained to the detriment of Soarus and which Defendants are unjustly using to their advantage without compensating Soarus.

39. The financial and other market benefits to Defendants are substantial and it would be unjust in law or equity for Defendants to retain such benefits without just compensation to Soarus regardless whether the Plaintiff's proprietary information is secret or not.

## PRAYER FOR RELIEF

WHEREFORE, Soarus respectfully requests this Court enter the following relief against the Defendants, including:

    a.    injunctive relief pursuant to 765 ILCS 1065/1 *et seq.* including a permanent injunction enjoining Defendants from enforcing any provisions of the '171 patent together with an assignment of ownership of the '171 patent to Plaintiff or Plaintiff's assignee.

    b.    an award of compensatory damages;

    c.    an award of increased or exemplary damages for the willful and malicious acts of Defendants;

    d.    an award of just compensation under Count III for Defendants' unjust enrichment;

    e.    an award of attorney's fees and costs;

    f.    such other relief that the Plaintiff may be entitled to in law or equity.

## JURY DEMAND

Pursuant to FED. R. CIV. P. 38(b), Soarus respectfully demands a trial by jury of all issues triable by a jury in its Complaint.

\*    \*    \*

Date: November 25, 2015 Respectfully submitted,

  /s/  *R. Mark Halligan*

R. Mark Halligan (#6200723)
**FISHERBROYLES, LLP**
203 North LaSalle Street
Suite 2100
Chicago, IL 60601
312.607.0102
rmarkhalligan@fisherbroyles.com

*Attorneys for Plaintiff*
*Soarus L.L.C.*

Case: 1:15-cv-10652 Document #: 1 Filed: 11/25/15 Page 11 of 11 PageID #:11